UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                    Plaintiff,

        v.

THE CHEESECAKE FACTORY,
INC., et al.,

                    Defendants.

CASE NO. C16-1942JLR

ORDER ON MOTIONS
RELATED TO DISCOVERY
DISPUTES

## I.    INTRODUCTION

Before the court are two motions:  (1) Defendants The Cheesecake Factory, Inc.
and The Cheesecake Factory Restaurants, Inc.'s (collectively, "Defendants") motion to
compel responses to their first set of interrogatories, requests for production of
documents ("RFP"), and requests for admission ("RFA") (Def. Mot. (Dkt. # 22)); and (2)
Plaintiff Equal Employment Opportunity Commission's ("the EEOC") motion to quash
Defendants' third-party subpoenas to Charging Party Oleg Ivanov's prior employers

(EEOC Mot. (Dkt. # 24)). The motions involve overlapping issues of privilege and relevance, among other issues. The court has considered the motions, the parties' submissions related to the motions, other relevant portions of the record, and the applicable law. Being fully advised,[1] the court grants in part and denies in part both motions as detailed below.

## II. BACKGROUND

The EEOC brings claims against Defendants under Title I and Title V of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, for failure to provide reasonable accommodation for a physical disability, disparate treatment, and retaliation. (*See generally* FAC (Dkt. # 37).) Specifically, the EEOC alleges Defendants (1) failed to accommodate Mr. Ivanov, a hearing impaired individual, because they did not provide him with close-captioned orientation and training videos or an American Sign Language ("ASL") interpreter ("reasonable accommodation"), (2) terminated his employment because of his physical disability ("disparate treatment"), and (3) retaliated against him for requesting an accommodation for his hearing impairment ("retaliation"). (*See generally id.*)

The EEOC requests the following remedies for Mr. Ivanov: (1) four days of back pay, which the EEOC estimates at $480.00, excluding interest (7/20/17 Lee Decl. (Dkt.

//

---

[1] Neither party requested oral argument. The parties have thoroughly briefed the issues, and oral argument would not help the court's disposition of either motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

# 25) ¶ 2); (2) garden variety compensatory damages for emotional distress—the proof of which the EEOC has stipulated will consist only of Mr. Ivanov's testimony (*id.* ¶ 3 (at 7); *see also* FAC at 7-8 (Prayer for Relief ¶ D)); and (3) an award of punitive damages (7/20/17 Lee Decl. ¶ 2).

## A.    Defendants' Interrogatories and RFPs

On March 28, 2017, Defendants served interrogatories, RFPs, and RFAs on the EEOC. (7/20/17 Hoag Decl. (Dkt. # 23) ¶ 2.) The discovery requests asked for information and documents concerning Mr. Ivanov's employment and medical history. (*See id.* ¶ 3, Exs. A, B.)

### 1.    RFPs and Interrogatories re:  Medical Records and Information

In Interrogatory No. 2, Defendants ask the EEOC to identify "all medical professionals or other persons who have diagnosed [Mr. Ivanov], or with whom [Mr. Ivanov] has consulted, been treated by, or met with, concerning any condition, physical or mental limitation, disease, ailment or impairment that you or [Mr. Ivanov] believe is or was a disability from January 1, 2010 to the present."[2]  (*Id.* ¶ 3, Ex. A at 4.) Interrogatory No. 11 requests that the EEOC "[i]dentify every professional—whether medical doctor, psychologist, psychiatrist, social worker, or counselor—from whom [Mr. Ivanov] has

//

//

---

[2] RFP No. 1 relates to Interrogatory No. 2. (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 7 ("Produce all documents evidencing . . . your answer to Interrogatory No. 2 . . . .").)

sought treatment from January 2007 to the present, for emotional upset, stress, depression, anxiety or any other mental or emotional condition."[3]  (*Id.* at 36.)

Other than a single audiological record and a letter marked "confidential" from Mr. Ivanov's medical provider, the EEOC provided Defendants with no documents or information concerning Mr. Ivanov's medical history or hearing impairment.  (*Id.* ¶ 4, Exs. A at 11-14, 36-42.)  Instead, the EEOC objected to Defendants' requests for documents and information concerning Mr. Ivanov's medical histories as irrelevant, protected by the psychotherapist-patient privilege, and protected by privacy interests.  (*Id.* ¶ 4, Ex. A at 4-11, 36-42.)

2.  RFA re:  Other Disabilities

In their discovery requests, Defendants also asked the EEOC to admit or deny whether it "claim[s] that [Mr. Ivanov] had any disability or impairment other than deafness or hearing impairment during his employment with Defendants."  (*Id.* ¶ 3, Ex. B at 9 (RFA No. 7).)  The EEOC did not admit or deny the foregoing statement, but rather "admit[ted] that Paragraph 15 of its Complaint . . . states that [Mr. Ivanov] 'is an individual with a disability and has a record of a disability,' that '[h]e was born deaf,' and '[t]his permanent impairment to his special sense organs substantially limits several of Mr. Ivanov's major life activities including "hearing" and "communicating.""'  (*Id.*

//

---

[3] RFP No. 9 relates to Interrogatory No. 11.  (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 39 ("Produce all documents evidencing . . . your answer to Interrogatory No. 11 . . . .").)

1  (quoting Compl. (Dkt # 1) ¶ 15).)[4]  The EEOC continues to refuse to affirmatively state

2  that hearing impairment was Mr. Ivanov's only disability during his employment with

3  Defendants.  (*Id.* ¶ 10, Ex. H.)

4      Defendants believe that Mr. Ivanov may have a disability or disabilities in addition

5  to hearing impairment.  Specifically, the EEOC produced partially redacted documents

6  indicating that Mr. Ivanov informed the EEOC, in connection with his employment by

7  Defendants, of a disability or disabilities in addition to his hearing impairment.  (*Id.* ¶ 5,

8  Ex. C, D; *see also* 7/31/17 Hoag Decl. (Dkt. # 27) ¶ 9, Ex. 5.)  The EEOC redacted these

9  documents based on the psychotherapist/patient privilege.  (*See* 7/20/17 Hoag Decl. ¶ 5,

10  Ex. E (attaching privilege log).)

11      3.  <u>RFPs and Interrogatories re:  Employment History</u>

12      Defendants also requested that the EEOC produce all employment records for Mr.

13  Ivanov from January 1, 2007, forward; all documents regarding each request for an

14  accommodation that Mr. Ivanov made to any employer from 2005 to the present; and

15  every written communication in which Mr. Ivanov notified an employer of any disability

16  from 2010, forward.  (*Id.* ¶ 3, Ex. A at 11, 13, 15, 17, 49, 58.)  The EEOC objected to

17  these requests on grounds of relevance, overbreadth, burdensomeness, proportionality,

18  the psychotherapist/patient privilege, Mr. Ivanov's privacy interest in non-therapist

19  medical records, and because Defendants had never asked for these documents or

20

21  _____

    [4] The EEOC also objects to Defendants' RFA No. 7 on grounds of attorney work product

22  and attorney/client privilege.  (7/20/17 Hoag Decl. ¶ 3, Ex. B at 9.)  Neither party raises or briefs
    this issue, and therefore, the court does not address it.

information during the interactive process of July 2014-September 2014.[5]  (*See id.* at 13-14, 17-20, 50-53, 58-61.)

Despite its objections, in supplemental discovery responses, the EEOC provided Defendants with a list of Mr. Ivanov's previous employers dating back to 2007.  (*Id.* ¶ 9, Ex. G at 13.)  Mr. Ivanov's prior employers include:  (1) Shared Journeys (2004-February 15, 2008); (2) Aloha Inn (January-December, 2009); (3) Catholic Community Services of Western Washington ("Catholic Community Services") (January-December 2009);[6] and (4) Puget Sound Regional Services (2012-May 31, 2014).  (*Id.*; *see also* 7/31/17 Hoag Decl. ¶ 7.)  Mr. Ivanov has not been employed since his position with Defendants ended on September 10, 2014.  (*Id.* ¶ 9, Ex. G at 13.)  The EEOC also stated in its supplemental discovery responses that "it does not have any documents related to Mr. Ivanov's employment during the period 2007 until June 1, 2014[,] with an employer other than Defendants," but unilaterally narrowed Defendants' request to those documents "that relate to a request for an accommodation of [Mr. Ivanov's] hearing impairment."  (*Id.* at 15.)  As Defendants point out, this limitation excludes documents that relate to Mr. Ivanov's performance, attendance, and discipline.  (Def. Mot. at 4.)  The EEOC has not

_____

[5] The implementing regulations of the ADA state that in determining the appropriate reasonable accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3). Although this federal regulation may have bearing on substantive arguments before the court, it is not a proper basis for objecting to discovery.

[6] Catholic Community Services apparently owns or operates Aloha Inn.  (*See* Ivanov Decl. (Dkt. # 33) ¶ 4 ("Catholic Community Services . . . owns the Aloha Inn."); *see also* 7/31/17 Hoag Decl. ¶ 7 ("Aloha Inn . . . is operated by Catholic Community Services . . . .").)

clarified whether any responsive documents—outside of its unilateral limitation—exist. (*Id.* ¶ 11 & Ex. I.)

After meeting and conferring with counsel for the EEOC, on July 20, 2017, Defendants filed the present motion to compel discovery responses from the EEOC. (*See* Def. Mot.)

**B.      Defendants' Third-Party Subpoenas**

On July 7, 2017, Defendants notified the EEOC that they intended to issue third-party subpoenas to Mr. Ivanov's prior employers:  Shared Journeys, Aloha Inn, and Puget Sound Regional Services.  (Lee Decl. ¶ 7.)  Defendants seek the following documents from each of these employers:

> Any and all records, files, and documents . . . in the possession, custody, or control of Aloha Inn [or Shared Journeys or Puget Sound Regional Services, respectively] pertaining in any way to Oleg Ivanov . . . for the following for the time period January 1, 2007 through present. This request includes, but is not limited to, all personnel, disciplinary, and medical records, and any email correspondence with or about Mr. Ivanov.

(*See id.* ¶ 7, Ex. C at 9; EEOC Mot. at 6.)  The EEOC reiterated its objections to the production of these documents and conferred with Defendants' counsel on the issue. (*Id.* ¶¶ 8-9.)  On July 14, 2017, Defendants served third-party subpoenas on the three entities identified above and also served a substantively identical subpoena on Catholic Community Services.  (*Id.* ¶¶ 13-14 & Ex. F; 7/31/17 Hoag Decl. ¶ 7.)  After meeting and conferring with counsel for Defendants, the EEOC filed it motion to quash Defendants' third-party subpoenas on July 20, 2017.  (*See* EEOC Mot.)

//

# III.   ANALYSIS

The EEOC's objections to Defendants' discovery requests and to Defendants' third-party subpoenas are overlapping.  Thus, the substantive issues underlying Defendants' motion to compel and the EEOC's motion to quash are overlapping. (*Compare* Def. Mot., *with* EEOC Mot.)  Those issues include:  (1) the psychotherapist/patient privilege (*see* Def. Mot. at 4-7; EEOC Mot. at 7-9); (2) Mr. Ivanov's privacy interest, if any, in his medical records and information concerning any other disabilities that Mr. Ivanov may have (Def. Mot. at 8-10; EEOC Mot. at 7-9); (3) the propriety of the EEOC's response to Defendants' RFA concerning Mr. Ivanov's disability or disabilities, and (4) the relevance of records from Mr. Ivanov's prior employers and the proportionality of Defendants' third-party subpoenas, interrogatories, and RFPs concerning Mr. Ivanov's work history (Def. Mot. at 10-11; EEOC Mot. at 9-11).  In its analysis, the court will address these substantive issues and then summarize how its various rulings apply to Defendants' discovery requests and third-party subpoenas.

## A.   The Psychotherapist/Patient Privilege

Defendants request that the EEOC identify and produce records from any medical professional that has diagnosed or treated a condition that the EEOC or Mr. Ivanov believes is or was a disability from January 1, 2010, to the present.  (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 4, 7. )  Defendants also request that the EEOC identify and produce records from any psychologist, psychiatrist, social worker or counselor from whom Mr. Ivanov sought treatment from January 2007 to the present for any mental or emotional

condition.  (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 36, 39.)  The EEOC objects to

Defendants' interrogatories and RFPs related to Mr. Ivanov's medical history in part on

grounds that these requests seek information or documents protected by the

psychotherapist/patient privilege.  (*See* EEOC Resp. (Dkt. # 28) at 5-7.)  The EEOC also

objects to Defendants' third-party subpoenas to Mr. Ivanov's former employers and

Defendants' discovery requests related to Mr. Ivanov's job history based on this

privilege.  (*See* EEOC Mot. at 7; 7/20/17 Hoag Decl. ¶ 3, Ex. A at 16, 18-19, 51-52, 59-

60; 7/31/17 Hoag Decl. ¶ 8, Ex. 3.)  Defendants argue that Mr. Ivanov waived the

psychotherapist/patient privilege by asserting emotional distress damages (Def. Mot. at

4-7: Def. Resp. (Dkt. # 26) at 5, n.4) and by revealing information or documents

concerning his therapy to his employers (Def. Resp. at 5).  Defendants also argue that

the privilege does not apply to documents or information in the hands of Mr. Ivanov's

prior employers because those employers did not serve as his psychotherapist or provide

diagnosis or treatment.  (*Id.* at 4.)

Confidential communications between a licensed psychotherapist[7] and patient

during the course of diagnosis and treatment are protected from compelled disclosure

under Federal Rule of Evidence 501.[8]  *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).  As the

proponent of invoking the privilege, the EEOC bears the burden of establishing its

---

[7] The privilege also extends to licensed social workers in the course of psychotherapy.
*Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

[8] Because this is a federal question case under 28 U.S.C. § 1331 (*see* FAC ¶ 1), federal
law provides the rules for decision, and federal common law governs any applicable privileges.
Fed. R. Civ. P. 501; *Religious Tech. Ctr. v. Wollerstein*, 971 F.2d 364, 367 n.10 (9th Cir. 1992).

necessary elements. *United States v. Romo*, 413 F.3d 1044, 1047 (9th Cir. 2005); *Speaker v. Cty. of San Bernadino*, 82 F. Supp. 2d 1105, 1108 (C.D. Cal. 2000) (ruling that the burden of proof for the psychotherapist-patient privilege is on the party seeking to establish that the privilege exists).

The Ninth Circuit has recognized that "when a plaintiff puts his emotional condition at issue during a trial, he waives privilege protecting his psychological records." *Lahrichi v. Lumera Corp.*, 433 F. App'x 519, 521 (9th Cir. 2011) (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994)). Although it is clear a plaintiff may waive the privilege, the Ninth Circuit has provided little guidance on what constitutes placing one's emotional condition at issue. Thus, district courts have adopted different approaches to determine whether the patient has waived the privilege in the course of asserting certain claims or damages. *Carrig v. Kellogg USA Inc.*, No. C12-837RSM, 2013 WL 392715, at *2 (W.D. Wash. Jan. 30, 2013) (collecting cases and describing alternative approaches).

Under a broad waiver standard, the privilege is waived whenever the patient places his or her mental condition at issue. *See EEOC v. Peters' Bakery*, 301 F.R.D. 482, 485 (N.D. Cal. 2014). More narrow approaches find waiver only when the patient affirmatively relies on privileged communications or where the plaintiff seeks more than "garden variety" emotional distress damages and alleges emotional distress that is "complex" or has resulted in specific disorders.[9] *See Stallworth v. Brollini*, 288 F.R.D.

---

[9]"Garden-variety emotional distress has been described . . . as . . . that which is 'simple or usual.' In contrast, emotional distress that is not garden variety 'may be complex, such as that

439, 443 (N.D. Cal. 2012) (collecting cases). Here, even though Mr. Ivanov seeks only garden variety emotional damages, Defendants assert that broad waiver should apply because "[n]early all the damages sought in this litigation are emotional distress damages." (Def. Mot. at 5.) In particular, Defendants assert that the court should apply a broad waiver because emotional distress is the "crux" of Mr. Ivanov's damages claim. (*Id.* at 6 (citing *EEOC v. Cal. Pyschiatric Transitions*, 258 F.R.D. 391, 400 (E.D. Cal. 2009).)

In this case, Mr. Ivanov's primary claim for damages is based on his emotional distress. The only other damages he seeks are four days of back pay, which amount to approximately $480.00, and punitive damages. (EEOC Mot. at 3.) However, Mr. Ivanov seeks damages for only "garden variety" emotional distress. (*Id.* at 3-4, 8.) He does not allege complex emotional distress or that his emotional distress has resulted in any specific psychiatric disorder, and the EEOC has stipulated that proof of Mr. Ivanov's emotional distress damages will consist solely of Mr. Ivanov's testimony. (*Id.* at 4-5 ("The EEOC . . . stipulated that it does not claim that Defendants' actions resulted in . . . any medically diagnosable condition . . . [and] it will not call a treating health care provider to prove Mr. Ivanovo's [sic] compensatory damages, but will instead rely on his testimony.").) The mere fact that Mr. Ivanov's primary claim for relief is based on emotional distress does not alter the court's privilege considerations where the emotion

resulting in a specific psychiatric disorder.'" *Fajardo v. Pierce Cty.*, No. C08-5136 RBL, 2009 WL 1765756, at *2 (W.D. Wash. June 19, 2009), *on reconsideration in part*, No. 3:08-CV-05136-RBL, 2009 WL 2243829 (W.D. Wash. July 22, 2009) (quoting *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003) (alterations in original).

distress damages claim remains "garden variety." *See Peters' Bakery*, 301 F.R.D. at 485-86. Mr. Ivanov has made clear that he will not rely on any psychotherapist-patient communications or expert psychotherapist testimony to prove his damages. (*See* EEOC Mot. at 3 (stipulating that proof of Mr. Ivanov's compensatory damages "will consist only of Mr. Ivanov's testimony").) Applying either of the two more narrow standards, the court concludes that Mr. Ivanov has not waived the privilege related to psychotherapist-patient communications by asserting damages based on garden variety emotional distress.

The foregoing analysis, however, does not end the court's inquiry. The psychotherapist-patient privilege does not apply to some of the information Defendants seek in their discovery requests, and Mr. Ivanov has waived application of the privilege in other instances. First, the court notes that the psychotherapist-patient privilege does not apply to the names of Mr. Ivanov's providers and the dates of his treatments. *See In Re Zuniga*, 714 F.2d 632, 640 (6th Cir. 1983) ("[A]s a general rule, the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege."); *Redon v. Ruiz*, No. 13CV1765-WQH(KSC), 2015 WL 13229500, at *9 (S.D. Cal. Dec. 4, 2015); *Korff v. City of Phoenix,* No. CV-13-02317-PHX-ESW, 2015 WL 4065070, at *2 (D. Ariz. July 2, 2015) ("The [psychotherapist-patient] privilege does not protect the identity of the providers."). Thus, the EEOC must provide the names, business addresses, and phone numbers, for Mr. Ivanov's psychologists, psychiatrists, social workers, and counselors, along with Mr. Ivanov's dates of treatment, as requested in Interrogatories Nos. 2 and 11.

Second, the privilege applies only to communications that occurred "in the course of diagnosis or treatment." *See Jaffee*, 518 U.S. at 15. The privilege does not attach to Mr. Ivanov's statements to an EEOC investigator because Mr. Ivanov did not make those statements in the course of diagnosis and treatment but rather for purposes of asserting his claim against Defendants. (*See* 7/20/17 Hoag Decl. ¶ 5, Exs. C, D, E.) Accordingly, the court concludes that the EEOC may not redact portions of Mr. Ivanov's statements to the EEOC on the basis of this privilege.[10] (*See* 7/20/17 Hoag Decl. ¶ 5, Exs. C, D.)

Likewise, the psychotherapist-patient privilege does not attach to statements or information that Mr. Ivanov provided to his former employers because there is no evidence that Mr. Ivanov provided the statements or information "in the course of diagnosis or treatment." *See Jaffee*, 518 U.S. at 15. In support of its argument, the EEOC asserts that in addition to being an employee of the Aloha Inn, Mr. Ivanov was also a resident (EEOC Mot. at 9; Ivanov Decl. ¶¶ 2-3), and Mr. Ivanov submits a sworn declaration that the Aloha Inn is "an organization that helps homeless people obtain housing" and "help[s] people with drug and alcohol issues." (*Id.* ¶ 2). He further testifies that "[t]he main reason [he] applied to the Aloha Inn . . . was because [he]

---

[10] In its briefing, the EEOC assumes that the psychotherapist-patient privilege applies and argues that Mr. Ivanov did not "waive" the privilege because his disclosure to the EEOC was "inadvertent." (EEOC Resp. at 11-12.) Yet, the EEOC submits no evidence in support of this argument—such as a declaration or other sworn testimony from Mr. Ivanov that he "misunderstood the EEOC's Intake Questionnaire and inadvertently revealed medical information." (*See id.* at 11.) As such, the EEOC's position is speculative and lacks evidentiary foundation. Further, the fact that Mr. Ivanov voluntarily chose to provide the medical and/or mental health information at issue to the EEOC demonstrates that he did not intend to keep the information private and believed the information was relevant to his claim against Defendants.

needed a place to live." (*Id.* ¶ 3.)  However, Mr. Ivanov does not testify that he received

services—either diagnosis or treatment—from a licensed psychotherapist, therapist, or

social worker at Aloha Inn.  (*See general id.*)  As such, there is no evidence that any of

his communications with the Aloha Inn or any of the documents that would be

responsive to Defendants' third-party subpoenas are covered by the privilege.

Further, even if Mr. Ivanov provided the Aloha Inn with documents or

communications that were originally protected by the psychotherapist-patient privilege,

he waived the privilege by disclosing the documents or communications to a third-party.

*See Jaffee*, 518 U.S. at 15, n.14 ("Like other testimonial privileges, the patient may of

course waive the protection."); *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir.

2013) ("A patient may waive the psychotherapist-patient privilege by knowingly and

voluntarily relinquishing it."); *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000)

(noting that "a patient can waive the protections of the psychotherapist/patient privilege

by disclosing the substance of therapy sessions to unrelated third parties"); *United States

v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4768084, at *7 (D. Kan. Sept. 5, 2013)

("Courts have consistently held that mental health records lose their privileged status if

the patient understands that they will be disclosed to a third party such as a current or

potential employer.").

In addition, the fact that the Aloha Inn may have required Mr. Ivanov to provide

information concerning diagnoses or treatments he received in the course of

psychotherapy in order to obtain housing benefits does not change the result.  A patient

waives the privilege as to confidential communications he discloses to third-party

providers for purposes of obtaining benefits. *See id.* at \*4 (concluding that the defendant waived the privilege after he "made the tactical decision to disclose information on confidential psychotherapy sessions in an attempt to obtain disability benefits from the State of Kansas"); *In re Grand Jury Investigation*, 114 F. Supp. 2d 1054, 1055-56 (D. Or. 2000) (concluding that the patient waived the psychotherapist-patient privilege when he submitted records to the Veterans Administration in support of his claim for benefits).

The EEOC makes an even weaker argument with respect to Mr. Ivanov's other former employers. At most, the EEOC speculates that "Mr. Ivanov might . . . have been a client of Puget Sound Regional Services in addition to an employee," and that he "might have been a client of Catholic Community Services of Washington." (EEOC Mot. at 9-10.) The EEOC's mere speculation that Mr. Ivanov may have been a client of these entities does not meet its burden of establishing that (1) Mr. Ivanov communicated with a licensed therapist, (2) his communications with the licensed therapist were confidential, and (3) the communications were made during the course of diagnosis or treatment.[11] *See Romo*, 413 F.3d at 1047. The court concludes that the EEOC may not object on grounds of the psychotherapist-patient privilege to Defendants' third-party subpoenas or discovery requests related to Mr. Ivanov's job history.

//

//

---

[11] Further, after the EEOC filed its motion to quash, Defendants confirmed that Mr. Ivanov has never received social services from Puget Sound Regional Services. (7/31/17 Hoag Decl. ¶ 6, Ex. 3.) The EEOC has not submitted any argument or evidence to the contrary. (*See* EEOC Reply (Dkt. # 32); *see generally* Ivanov Decl.)

**B.  Privacy Interest in Medical Records**

The EEOC also objects to Defendants' discovery requests concerning Mr. Ivanov's medical or mental health on the basis of Mr. Ivanov's privacy interest in his medical records and to Defendants' third-party subpoenas to Mr. Ivanov's former employers on the same ground.  (EEOC Resp. at 7-8; EEOC Mot. at 7-8.)

First, the court notes that under federal law, there is no physician-patient privilege protecting medical records from discovery.  *In re Grand Jury Proceedings*, 867 F. 2d 562, 564 (9th Cir.1989) (noting the Ninth Circuit's refusal to adopt a physician-patient privilege), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996); *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) (citing *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1997) ("The physician-patient evidentiary privilege is unknown to the common law.")); *Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785, 791 (5th Cir. 1993).  Further, although the Supreme Court addressed whether the Constitution protects medical privacy in *Whalen*, 429 U.S. at 605-06, it "has never so held," *Seaton v. Mayberg*, 610 F.3d 530, 536-37 (9th Cir. 2010).

Nevertheless, the Ninth Circuit has recognized a constitutional right to the privacy of medical information in a variety of contexts.  *Id.* at 537-38 (citing cases) ("We have recognized a constitutional right to privacy of medical information that *Whalen* did not, but in contexts different from this case.").  Yet, the right to privacy in medical records that the Ninth Circuit has recognized is not absolute.  *Id.* at 538.  Indeed, "privacy rights can be waived." *Thomas v. Carrasco*, No. 1:04-CV-05793-MJS PC, 2010 WL 4024930, at *3 (E.D. Cal. Oct. 13, 2010), *aff'd*, 474 F. App'x 692 (9th Cir. 2012) (citing *Doe v.*

*Marsh*, 105 F.3d 106, 111 (2d Cir. 1997) (holding that the plaintiff waived his right to privacy by entering into a settlement agreement that he knew would become a matter of public record)).

The Ninth Circuit has yet to address medical privacy rights in the context of a discovery dispute involving a disability or failure to accommodate claim under the ADA, but multiple district courts have held that the right to privacy of medical records is waived when the plaintiff's medical condition is "at issue" in a lawsuit. *See id.* (citing *Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996) and other cases); *see also Larson v. Bailiff*, No. 13cv2790 BAS(JLB), 2015 WL 4425660, at *5 (S.D. Cal. July 15, 2015) (ruling that by placing his physical health at issue, the plaintiff waived any privacy right in his medical records); *Frye v. Ayers*, No. CIVS990628LKKKJM, 2009 WL 1312924, at *2 (E.D. Cal. May 12, 2009) ("By making these claims [which placed his medical condition at issue], petitioner waived his privacy rights in his medical records."); *Barnes v. Glennon*, No. 9:05–CV–0153 (LEK/RFT), 2006 WL 2811821, at *4 (N.D.N.Y. Sept. 28, 2006) (ruling that the release of the plaintiff's medical records "did not violate Plaintiff's constitutional right to privacy since medical conditions were at the heart of the argument presented by Plaintiff in his habeas corpus petition"); *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112-13 (E.D. Pa. 1987) ("[W]hen a party places his or her physical or mental condition in issue, the privacy right is waived").

Here, Mr. Ivanov has placed his medical condition at issue. The EEOC argues that if Defendants had provided Mr. Ivanov with closed-captioned training or an ASL interpreter, he would have arrived at work on time, understood Defendants' written

instructions regarding scheduling, and complied with Defendants' work schedules. (*See* EEOC Mot. at 2-3; *see also generally* FAC.) However, the argument that a certain disability limited Mr. Ivanov's ability to follow attendance policies goes directly to his entire capacity to understand the schedules and arrive on time. As Defendants point out, evidence that Mr. Ivanov violated Defendants' attendance policies due to another disability—such as dyslexia, for example, which could limit his ability to understand written schedules or instructions—would be relevant to the EEOC's failure to accommodate claim. (Def. Resp. (Dkt. # 26) at 6 (citing *Kelley v. Amazon.com, Inc.*, No. 12-CV-5132-TOR, 2013 WL 6119229, at *6 (E.D. Wash. Nov. 21, 2013) ("Given that Plaintiff did not specifically advise [her employer] of a possible connection between her deficient performance and her disabilities, [her employer] was not required to accommodate Plaintiff as a matter of law.") and *Kubie v. Target Corp.*, No. CIVA09CV00669ZlWKMT, 2009 WL 5216943, at *4 (D. Colo. Dec. 30, 2009) (ruling that the defendant is entitled to production of the plaintiff's medical records that "contain[ed] substantial evidence that . . . [the plaintiff] was suffering from conditions wholly unrelated to [the alleged disability]—conditions which . . . could have had an impact on his work attendance")).)

In discovery materials that the EEOC already produced to Defendants, Mr. Ivanov refers to discussions with Defendants' managers where he mentioned unspecified health issues that allegedly prevented him from working full time. (*See* 7/20/17 Hoag Decl. ¶ 5, Ex. C; *see also* 7/31/17 Hoag Decl. ¶ 9, Ex. 5.) In addition, the EEOC has produced a partially redacted document indicating that Mr. Ivanov may have informed the EEOC, in

connection with his employment by Defendants, of a disability or disabilities other than hearing impairment. (*See* 7/20/17 Hoag Decl. ¶ 5, Ex. D.) Defendants are entitled to discover what those health issues or other disabilities are and whether they affected Mr. Ivanov's ability to show up for work timely and adhere to Defendants' work schedule. Accordingly, the court concludes that Mr. Ivanov has waived any privacy interest in his medical records related to his hearing impairment or any other disability. These records are relevant, Mr. Ivanov has waived his privacy interest in them, and the EEOC must produce them.[12]

For the same reasons, the court concludes that EEOC has no basis for objecting to Defendants' third-party subpoenas to Mr. Ivanov's former employers based on any privacy interest in Mr. Ivanov's medical records. As discussed above, to the extent Mr.

---

[12] Although the parties' briefing is unclear, evidence of other disabilities may be contained within Mr. Ivanov's mental health records as well. For example, the EEOC partially redacted documents based on the psychotherapist-patient privilege indicating that Mr. Ivanov informed the EEOC, in connection with his employment by Defendants, of a disability or disabilities other than hearing impairment. (*See* 7/20/17 Hoag Decl. ¶ 5, Exs. C, D, and E (attaching privilege log).) Mr. Ivanov's claim for garden variety emotional distress damages did not waive his psychotherapist-patient privilege with respect to his mental health records. *See supra* § III.A. However, if his mental health records contain evidence concerning other disabilities, then the psychotherapist-patient privilege is waived, and Mr. Ivanov must produce records from his mental health practitioners. By asserting a claim for failure to accommodate a disability under the ADA, Mr. Ivanov has placed these records at issue if they contain evidence of diagnosis or treatment of an undisclosed disability. *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (ruling that the plaintiff in an ADA case who alleged defendant did not accommodate her clinical depression waived psychotherapist-patient privilege); *Anderson v. Georgia-Pac. Wood Prod., LLC*, No. 2:11CV110-MEF, 2012 WL 2998344, at *4 (M.D. Ala. July 23, 2012) (ruling that the plaintiff waived the psychotherapist-patient privilege in the ADA case because "alleging disability discrimination and retaliatory discharge inherently places at issue the nature and extent of his employment disability, as well as his ability to perform the essential functions of his job if provided accommodations for his chronic lung disease.").

Ivanov provided medical records to his former employers that relate to his hearing impairment or any other disability, those records are relevant and Mr. Ivanov has waived his privacy interest by asserting a claim for failure to accommodate under the ADA.  In addition, Mr. Ivanov also waived any privacy interest in the medical records he disclosed to his former employers, who are third-parties to the relationship he has with his medical providers.  *Gooden v. Carson*, No. 2:05-CV-46-WCO, 2006 WL 1209923, at *7 (N.D. Ga. Apr. 26, 2006) (finding that the "plaintiff's own disclosure of the fact that his drug test was positive shows that he cannot establish that he had a legitimate expectation of privacy in this information").[13]

_____

[13] The EEOC also objected to Defendants' third-party subpoenas on grounds of irrelevance, overbreadth, and proportionality.  (*See* EEOC Mot. at 9-10.)  The EEOC lacks standing to object to the subpoenas on these grounds.  *See Ford Glob. Techs., LLC v. New World Int'l, Inc*., No. C15-1329JLR, 2015 WL 6507151, at *3 (W.D. Wash. Oct. 27, 2015) (ruling that if the subpoenaed non-party has not objected, the defendants lack standing to quash or modify a third-party subpoena on grounds of overbreadth or irrelevance); *Rankine v. Roller Bearing Co. of Am*., No. 12CV2065–IEG BLM, 2013 WL 3992963, at *4 (S.D. Cal. Aug. 5, 2013) (citing *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012) ("A party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected.")); Fed. R. Civ. P. 45(d)(3).

In addition, the EEOC objects to the production of these records based on Federal Rule of Evidence 404(a). (EEOC Mot. at 11.)  This issue goes to admissibility of the records at trial and not to their discoverability.  *Caballero v. Bodega Latina Corp*., No. 217CV00236JADVCF, 2017 WL 3174931, at *9 (D. Nev. July 25, 2017) ("Admissibility is different than discoverability."); *United States ex rel. Brown v. Celgene Corp*., No. CV 10-3165 GHK (SS), 2016 WL 6542730, at *8 (C.D. Cal. June 29, 2016) ("[D]iscoverability, even following the amendment of the Federal Rules in December 2015, and admissibility are separate inquiries."); Fed. R. Civ. P. 26(b) ("Information within the scope of discovery need not be admissible in evidence to be discoverable.").  The court declines to rule on admissibility at this stage of the proceedings. Accordingly, the EEOC's "only cognizable basis for quashing the [s]ubpeona[s] are that [they] seek[] privileged and/or confidential information." *Ford Glob. Techs*., 2015 WL 6507151, at *3 (citing Fed. R. Civ. P. 45(d)(3) and *Rankine*, 2013 WL 3992963, at *4).  Nevertheless, as described in Section III.D., the court limits the breadth of the subpoenas. *See infra* § III.D.; *see also* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the . . . extent of

## C.    RFA No. 7

In its response to Defendants' RFA No. 7, the EEOC refused to admit or deny whether it "claim[s] that [Mr. Ivanov] had any disability or impairment other than deafness or hearing impairment during his employment with Defendants" (7/20/17 Hoag Decl. ¶ 3, Ex. B (RFA No. 7) at 9), and the EEOC continues to refuse to affirmatively state whether hearing impairment was Mr. Ivanov's only disability during his employment with Defendants (*id.* ¶ 10, Ex. H).

Federal Rule of Civil Procedure 36(a)(4) provides, in pertinent part: "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Further, "[a] denial must fairly respond to the substance of the matter." *Id.* The EEOC's response to Defendants' RFA No. 7—which does not admit, deny, or state why the EEOC cannot truthfully admit or deny—does not "fairly respond[s] to the substance of the matter" and violates this rule. *See id.*

As discussed above, the EEOC has produced evidence indicating that Mr. Ivanov may be suffering from another disability other than impaired hearing. (*See* 7/31/17 Hoag Decl. ¶ 9, Ex. 5; 7/20/17 Hoag Decl. ¶ 5, Ex. C, D.) The court has already ruled that this evidence is relevant and Mr. Ivanov has waived any psychotherapist-patient privilege or medical privacy interest. (*See supra* §§ III.A, III.B.) Accordingly, the court orders the

//

discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

EEOC to appropriately either admit or deny Defendants' RFA No. 7 in accord with

Federal Rule of Civil Procedure 36(a)(4).

**D.     Mr. Ivanov's Employment Records**

The EEOC objected to the production of records in its possession related to Mr.

Ivanov's past employment on grounds of Mr. Ivanov's psychotherapist-patient privilege

and the privacy interest in his medical records.  (7/20/17 Hoag Decl. Ex. G (Int. Nos. 2,

11; RFP Nos. 1, 9).)  The court has already addressed these issues and ruled that the

privilege and privacy interest are not proper objections to producing these documents.

*See supra* §§ III.A., B.

The EEOC, however, also objects to producing records from Mr. Ivanov's former

employers—other than those "that relate to a request for an accommodation of his

hearing impairment"—on grounds of relevance, overbreadth, and proportionality.

(7/20/17 Hoag Decl. ¶ 9, Ex. G (Int. Nos. 2, 11, RFP Nos. 1, 9).)  As Defendants point

out, the EEOC's unilateral limitation excludes documents that relate to Mr. Ivanov's

performance, attendance, and discipline.  (Def. Mot. at 4.)  The scope of relevant

documents is not so limited.  The EEOC's failure to accommodate claim requires the

EEOC to show the Mr. Ivanov "required an accommodation to perform the essential

functions of his job on equal terms with nondisabled employees" and to establish that Mr.

Ivanov is qualified for the job and capable of performing it with reasonable

accommodation.  *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D.

Wash. 2014).  Likewise, the discrimination and retaliation claims raise the issue of

whether Defendants' reason for terminating Mr. Ivanov—his poor attendance and

attitude—was pretextual. *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).  Records or documents related to Mr. Ivanov's employment history, such as descriptions of jobs he held, representations in his job applications, his past attendance, his performance and disciplinary records, recorded communications with his managers or co-workers, and all documents related to accommodations may contain information relevant to those issues.  Numerous courts have found such documents to be relevant. *See, e.g.*, *Levitin v. Nationwide Mut. Ins. Co.*, No. 2:12-CV-34, 2012 WL 6552814, at *3 (S.D. Ohio Dec. 14, 2012) ("[R]ecords reflecting Plaintiff's performance reviews, evaluations, complaints, and reasons for termination [from his former employers] fall within the scope of permissible discovery [in a case involving a retaliation claim].  Such records could bear on . . . the credibility of Plaintiff's allegations relating to his performance, his qualifications, and the legitimacy of Defendant's proffered bases for the performance ratings it assigned to Plaintiff." (citing cases)).

The EEOC asserts that Defendants' request for records from Mr. Ivanov's former employers is not "proportional to the needs of the case" under Federal Rule of Civil Procedure 26 because he requests only an estimated $480.00 in back pay.  (EEOC Mot. at 11.)  Defendants' request for records related to Mr. Ivanov's former employment, however, is not directed at the issue of back pay or reinstatement.  (*See* Def. Resp. at 10.) Rather, these requests are directed at discovering information relevant to Mr. Ivanov's claims and Defendants' defenses.  Mr. Ivanov alleges hearing impairment (*see* FAC ¶ 15 ("[Mr. Ivanov] was born deaf.")), and as already discussed, there is evidence that Mr. Ivanov may have a second disability of unknown type (*see* 7/20/17 Hoag Decl. ¶ 5, Ex.

C; *see also* 7/31/17 Hoag Decl. ¶ 9, Ex. 5). How Mr. Ivanov engaged with his former employers concerning his hearing impairment and any other disability is relevant and proportional to this ADA case.

Defendants' requests for production of documents concerning Mr. Ivanov's former employers and third-party subpoenas to Mr. Ivanov's former employers, however, are overbroad in two respects. First, Defendants have not limited their subpoenas to and requests for production of documents concerning Mr. Ivanov's former employers to just employment records. (EEOC Mot. at 9-10.) Mr. Ivanov was not only an employee of Aloha Inn, but a resident as well. (Ivanov Decl. ¶ 3.) Mr. Ivanov's other former employers also provide social services. (7/20/17 Lee Decl. ¶¶ 10, 16.) Defendants have failed to make any showing that documents concerning Mr. Ivanov that may be in the possession of his former employers and that relate to solely to the provision of social services—and not Mr. Ivanov's employment—are relevant and proportional to this case.

Further, some of Defendants' requests for employment records extend beyond ten years. (*Id.* ¶ 3, Ex. A at 49 (RFP No. 14 extending back to 2005).) The court finds that discovery requests for employment information or records extending more than ten years in the past are not proportional to the needs of the case. *See, e.g.*, *Levitin*, 2012 WL 6552814, at *4 (agreeing that the defendant's offered temporal limit of ten years on subpoenas to the plaintiff's former employers was reasonable). The court therefore limits Defendants' discovery requests concerning employment records and third-party subpoenas to Mr. Ivanov's former employers to the past ten years.

//

**E.  Defendants' Request for Attorney's Fees**

Defendants request the fees they incurred in opposing the EEOC's motion to quash as sanctions for bringing an improvident motion.  (Def. Resp. at 10-11.)  "If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).  After ruling on this motion, and in light of the discretion granted by the Rule's language, the court orders that the parties bear their own attorney's fees and costs incurred in bringing this motion.  Accordingly, the court denies Defendants' request for attorney's fees.

**F.  Summary of Rulings Concerning Defendants' Discovery Requests and Third-Party Subpoenas**

Because neither the psychotherapist-patient privilege, *see supra* § III.A., nor any privilege based on Mr. Ivanov's privacy interest in his medical records, *see supra* § III.B., applies to (1) the information and records Defendants request in their third-party subpoenas to Mr. Ivanov's former employers or (2) Defendants' discovery requests regarding Mr. Ivanov's former employers, the court denies the EEOC's motion to quash the subpoenas entirely and grants in part Defendants' motion to compel responses to its discovery requests concerning Mr. Ivanov's employment history.  The court, however, limits Defendants' third-party subpoenas and employment-related discovery requests to employment records from the past ten years and excludes records related solely to social

//

//

services that Mr. Ivanov's former employers may have provided him.

The court also grants in part Defendants' motion to compel concerning Defendants' discovery requests related to Mr. Ivanov's medical records. The EEOC must respond to Defendants' discovery requests on this topic but only as those records relate to either Mr. Ivanov's hearing impairment or any other condition that constitutes a disability from January 1, 2010, to the present.[14] To the extent evidence of a condition that constitutes a disability from January 1, 2010, to the present, is contained within Mr. Ivanov's mental health records, the EEOC must produce those records as well. *See supra* § III.B., n.10.

The EEOC must provide the names, business addresses, and phone numbers, for Mr. Ivanov's psychologists, psychiatrists, social workers, and counselors, along with Mr. Ivanov's dates of treatment, but only back to January 1, 2010, as Defendants request in Interrogatory No. 2, rather than back as far as 2007, as Defendants request in Interrogatory No. 11. (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 4, 36.)

In addition, the EEOC must remove redactions from internal EEOC documents it produced to Defendants based on Mr. Ivanov's psychotherapist-patient privilege or his interest in medical privacy because these objections do not apply. (*See* 7/20/17 Hoag Decl. ¶ 5, Exs. C, D); *see supra* §§ III.A., B.

//

//

---

[14] The court limits these requests to January 1, 2010, to the present because this is the period of time to which Defendants refer in Interrogatory No. 2. (*See* 7/20/17 Hoag Decl. ¶ 3, Ex. A at 4.)

Finally, the EEOC must either admit or deny Defendants' RFA No. 7 in accord with Federal Rule of Civil Procedure 36(a)(4).

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Defendants' motion to compel (Dkt. # 22) and GRANTS in part and DENIES in part the EEOC's motion to quash Defendants' third-party subpoenas (Dkt # 24).  The court DENIES Defendants' request for attorney's fees.  The EEOC shall complete its responses to Defendants' requests for production, interrogatories, and requests for admission in accord with the court's rulings herein within 10 days of the filing of this order.

Dated this 6th day of September, 2017.

JAMES L. ROBART
United States District Judge